# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 144

**OCTOBER TERM, A.D. 2015**

**November 13, 2015**

JAMES JOE NORDWALL,

Appellant
(Defendant),

v.                                                                    S-15-0004

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Richard L. Lavery, Judge*

*Representing Appellant:*
> Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.  Argument by Mr. Westling.

*Representing Appellee:*
> Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Jenny L. Craig, Senior Assistant Attorney General; Van E. Snow, Assistant Attorney General.  Argument by Mr. Snow.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Appellant, James Joe Nordwall, challenges his convictions of four counts of first-degree rape in violation of Wyo. Stat. Ann. § 6-63 (1957) and three counts of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-302(a)(i).  He contends he was denied his constitutional right to a speedy trial and that the State violated the terms of a 1994 plea agreement.  We affirm.

## ISSUES

[¶2]   Appellant presents the following issues:

> 1. Did the trial court violate Mr. Nordwall's constitutional right to a speedy trial?
>
> 2. Did the prosecution violate the 1994 plea agreement when it did not dismiss the charges in the present case?

## FACTS

[¶3]   In 1994, Appellant was charged with four counts of first-degree sexual assault and one count of aggravated assault and battery after he kidnapped and repeatedly assaulted PW.  Appellant entered a plea pursuant to a plea agreement with the State.  Under the terms of the agreement, the State agreed to dismiss all but one of the counts, reduce the remaining count to second-degree sexual assault, and recommend that Appellant serve a prison term of three to five years.  In exchange, Appellant pled no contest to the remaining reduced count.

[¶4]   At the time of the plea agreement, the county attorney's office was aware of police reports from 1992 indicating that JN and JLN had been sexually assaulted by Appellant.  However, before Appellant entered into plea negotiations for the 1994 crimes against PW, another attorney in the office had decided not to file charges with respect to possible crimes committed against JN and JLN.  The prosecutor handling Appellant's case was aware of that decision and also knew that Appellant had admitted to assaulting other women when he was interviewed by law enforcement officers.

[¶5]   In 2013, JLN's boyfriend notified the Sweetwater County Sheriff's Office that Appellant was not registered as a sex offender as mandated by the sentence following his 1994 conviction.  When the Sheriff's Office investigated the matter, it discovered the JN and JLN police reports as well as the interview in which Appellant stated that there were other victims.  Further investigation followed and, ultimately, criminal charges were brought against Appellant.

1

[¶6]   On August 19, 2013, a criminal information was filed charging Appellant with crimes involving six different victims.   The final amended information charged Appellant, in Counts I, II, and III, with three counts of first-degree rape against TN and LW.   Appellant had advised law enforcement of these incidents when interviewed in 1993.   The information also charged Appellant, in Counts IV and V, with first-degree rape committed against newly-identified victims LVW and AL.   Finally, the information charged Appellant, in Counts VI, VII, and VIII, with three counts of first-degree sexual assault against JN and JLN.   Those charges related to the incidents reflected in the 1992 police reports.

[¶7]   The matter proceeded to trial.   During trial, Appellant moved to dismiss the charges against him.   He claimed that the 1994 plea agreement barred the prosecution. The court and the parties agreed to hold an evidentiary hearing on the matter after trial. The jury returned a guilty verdict on four out of five counts of first-degree rape and on all three counts of first-degree sexual assault.[1]

[¶8]   After trial, a hearing on the motion to dismiss was held.   Appellant claimed the 1994 plea agreement contained an understanding that the State would not prosecute him for prior sexual assaults.   The State argued that the plea agreement did not include any such term.   Appellant and the prosecutor from the 1994 case testified about the plea agreement.   After considering the testimony, as well as the transcript of the change of plea hearing, the district court denied Appellant's motion to dismiss.   The court ruled that the plea agreement did not contain any term that barred prosecution for the crimes alleged in the current case.

[¶9]   The court sentenced Appellant to forty-five to fifty years imprisonment for each conviction of first-degree rape and first-degree sexual assault.   The court ordered the sexual assault sentences to be served concurrently, but consecutive to the rape sentences, which were also ordered to be served concurrently.   This appeal followed.

### *DISCUSSION*

**Issue 1: Speedy Trial**

[¶10]  In his first issue, Appellant contends that he was denied his constitutional right to a speedy trial.  Appellant notes that, in 1994, he was charged with crimes similar to those he was convicted of in the present case, and he claims that his convictions in the present case "were a part of that 1994 case."  Consequently, according to Appellant, the charges

---

[1] The jury found Appellant not guilty of first-degree rape against AL as charged in Count V of the information.

against him should have been brought in 1994. He claims that the speedy trial clock began running on August 1, 1994, when he signed the plea agreement. Using this date as a starting point, Appellant asserts that he experienced a delay in excess of 19 years, or 6,935 days.[2] The issue of whether the defendant has received a speedy trial is reviewed *de novo*. *Rhodes v. State*, 2015 WY 60, ¶ 9, 348 P.3d 404, 407 (Wyo. 2015).

[¶11] We have consistently held that a defendant's constitutional right to a speedy trial attaches only when he has been arrested or charged with a specific crime by the State. "The law is well-settled that the speedy trial right attaches upon the filing of a criminal complaint or the arrest of the defendant, whichever occurs first." *Humphrey v. State*, 2008 WY 67, ¶ 21, 185 P.3d 1236, 1244 (Wyo. 2008); *see also United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."). We have stated that "the Speedy Trial Clause has no application to the period of time in which a defendant is neither under arrest nor formally charged." *Humphrey*, ¶ 21, 185 P.3d at 1244.

[¶12] As indicated above, the county attorney was aware, in 1994, that Appellant may have sexually assaulted multiple women. At that time, however, Appellant was not arrested or charged for crimes committed against victims other than PW. The instant charges were filed on August 19, 2013. The speedy trial clock for those charges began on that date.[3] We find no violation of Appellant's constitutional right to a speedy trial.

### Issue 2: Plea Agreement

[¶13] In his second issue, Appellant contends that the filing of charges in the present case violated the terms of the 1994 plea agreement. A dispute over whether a plea agreement condition exists is a question of fact to be resolved by the trial court. *Cavender v. State*, 860 P.2d 1162, 1164 (Wyo. 1993); *Clouse v. State*, 809 P.2d 791, 794 (Wyo. 1991); *see also Doles v. State*, 2002 WY 146, ¶ 14, 55 P.3d 29, 33 (Wyo. 2002). We defer to the district court's findings of fact unless they are clearly erroneous. *Kruger*

---

[2] Appellant does not claim that a speedy trial violation occurred as a result of any delay that may have occurred between the filing of charges and trial in the present case. Accordingly, we do not examine that issue.

[3] Appellant's claim would effectively transform the right to a speedy trial into a statute of limitations barring prosecution. We have previously recognized that the decision to adopt a criminal statute of limitations is a "matter solely for the legislature," *Story v. State*, 721 P.2d 1020, 1026 (Wyo. 1986), and the legislature's choice to not adopt such a statute "does not appear to be oversight." *Vernier v. State*, 909 P.2d 1344, 1348 (Wyo. 1996).

*v. State*, 2012 WY 2, ¶ 40, 268 P.3d 248, 256 (Wyo. 2012). We view the evidence in the light most favorable to the district court's determination because that court had the opportunity to hear the evidence and assess the credibility of witnesses. *Owens v. State*, 2012 WY 14, ¶ 8, 269 P.3d 1093, 1095 (Wyo. 2012); *see also Cavender*, 860 P.2d at 1164. The ultimate question of whether a breach of a plea agreement has occurred is a question of law that we review *de novo*. *Osborn v. State*, 2012 WY 159, ¶ 9, 290 P.3d 1096, 1098 (Wyo. 2012).

[¶14] There is no question that the State was aware of allegations of criminal conduct against Appellant predating the 1994 plea agreement. Some of those allegations pertained to charges that were brought in this case. There is also no dispute that, at the time of the 1994 plea, the county attorney's office did not intend to prosecute Appellant for any of those crimes. We are unable to conclude, however, that the district court erred in finding that the 1994 plea bargain did not bar prosecution for any of those crimes.

[¶15] Under W.R.Cr.P. 11(e)(2), the district court has discretion to accept or reject a plea agreement. The rule provides that if the State agrees not to prosecute the defendant for other crimes, "the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." We find nothing in the record to indicate that the judge who approved Appellant's plea agreement was aware of a promise by the State not to prosecute Appellant for crimes committed against other victims prior to 1993.

[¶16] There was no written plea agreement between Appellant and the State. As a result, we must look to the recitation of the agreement given at the change of plea hearing to determine its terms. *Ford v. State*, 2003 WY 65, ¶ 12, 69 P.3d 407, 411 (Wyo. 2003). The terms of the plea agreement were disclosed on the record at Appellant's change of plea hearing by the prosecutor.

> COURT: [Counsel], what are the terms and conditions of any plea agreements that have been reached in this case?
>
> [Counsel]: Your Honor, the agreement proposed to the Court would be the State would amend – ask leave of the Court to orally amend Count IV to reflect a violation of Wyoming Statute 6-2-303(a)(ii), commonly known as Sexual Assault in the Second Degree, alleging that Mr. Nordwall inflicted sexual intrusion on the victim under circumstances not constituting Sexual Assault in the First Degree, in that he caused submission of the victim by any means that would prevent resistance by a victim of ordinary resolution.
>
> In exchange for – it's my understanding he'll be

4

offering a nolo contendere, no-contest plea to the amended Count IV. The State would dismiss the remaining counts in the Information, we would recommend to the Court that he serve a sentence of three to five years at the Wyoming State Penitentiary, with credit for time he's previously served in Sweetwater County Jail.

[¶17] The plea agreement makes specific reference to the State's promise to dismiss "the remaining counts." It is undisputed that the State dismissed all of "the remaining counts" against Appellant. It is also undisputed that none of the crimes charged in the present case were charged in the 1994 case and that the State has fulfilled all of the terms of the plea agreement that was approved by the district court in 1994.

[¶18] Appellant concedes that an agreement not to prosecute him for prior crimes was not incorporated into a record of the terms of the plea agreement. He claims, however, that the agreement included an unrecorded understanding that the State would not prosecute him for sexual assaults committed prior to 1993 and that such an agreement is enforceable even though the district court did not approve it as required by W.R.Cr.P. 11. Appellant relies upon our decision in *Rutti v. State*, 2004 WY 133, 100 P.3d 394 (Wyo. 2004) to support his position. His reliance is misplaced.

[¶19] In *Rutti*, the defendant entered a plea agreement and pled guilty to one count of third-degree sexual assault and one count of sexual exploitation of a child in return for the State's promise to dismiss the other two counts against him and to stand silent at sentencing. *Id.*, ¶ 5, 100 P.3d at 400. The record did not indicate whether the dismissal would be made with or without prejudice. *Id.*, ¶ 43, 100 P.3d at 411. Following the trial court's acceptance of the pleas, the State dismissed the other two counts without prejudice. *Id.*, ¶ 5, 100 P.3d at 400. On appeal, the defendant claimed that the plea agreement required the counts be dismissed with prejudice and that the State breached the plea agreement by having the counts dismissed without prejudice. *Id.*, ¶ 40, 100 P.3d at 410. After noting that the nature of the State's promise was not clear from the record, we held that the State did not breach the plea agreement by requesting the trial court dismiss the relevant charges without prejudice. *Id.*, ¶ 45, 100 P.3d at 411. We noted, however, that "refiling the dismissed counts arguably might constitute a breach of the plea agreement." *Id.* We stated that

> Even if this Court assumes that an intended material term of the plea agreement was for the State to dismiss the counts with prejudice, both the nature of the promise and the reasonable understanding of the promise to dismiss the counts would be that Rutti would not be subject to any further criminal proceedings on the dismissed counts. While it would be better practice for the State to request dismissal with

5

prejudice, it would not necessarily be required. What would be required is that the State not refile the dismissed counts against Rutti or threaten Rutti that it will refile the counts to gain an impermissible advantage. Rutti has not alleged that the State threatened him in any manner with the reinstatement of the dismissed counts.

*Id.*, ¶ 44, 100 P.3d at 411.

[¶20]  In the present case, in contrast to *Rutti*, there is no question that the State properly dismissed the remaining charges against Appellant in accordance with the parties' 1994 plea agreement.  The charges filed in the present case are not the same charges that were dismissed in 1994.  In *Rutti*, the defendant could reasonably expect that the State would dismiss the remaining charges with prejudice because the plea agreement specifically referenced dismissal of those charges.  In this case, Appellant is seeking dismissal of charges that were never referenced in the plea agreement.

[¶21]  At the hearing on Appellant's motion to dismiss, the 1994 prosecuting attorney testified that

> There was information I believe that had come up and given statements regarding those old actions, and it was not going to be prosecuted in light of what was going to happen with the [1994] case, so the understanding was they were not going to be prosecuted.  But it wasn't really reduced to part of the plea agreement because they were not being prosecuted.

When asked directly by the district court about his understanding of the plea agreement, the prosecutor again confirmed that the parties "discussed [Appellant's] prior history, his prior confessions regarding the past activity with these uncharged crimes, and they were not going to be charged, but we didn't put that as part of the agreement because they were not charged anyway."

[¶22]  For his part, Appellant testified that his plea agreement included a promise that he would not be charged with "anything in the past."  When asked whether this promise included all crimes, whether known or unknown to law enforcement, Appellant replied, "I don't know."  Although Appellant testified that he entered the plea agreement based on the understanding that he would not be prosecuted for any crimes occurring prior to 1993, he acknowledged that he did not say anything to indicate that was his understanding at his 1994 change of plea hearing.  Further, he acknowledged that he represented to the court that he had not been promised anything outside of the plea agreement.

[¶23]  The testimony of the prosecutor and Appellant support the finding that the plea

6

agreement did not contain a promise not to prosecute other crimes occurring prior to 1993. The district court's conclusion that the plea agreement did not include any such promise was not clearly erroneous. We conclude that the State did not breach the plea agreement by bringing charges against Appellant for those crimes in the present case.

[¶24] Affirmed.